ALLISON BROTHERS COMPANY, Appellant *v.* OSCAR W. ALLISON, IMPLEADED, etc., Respondent.

*Supreme Court, Fifth Department, General Term, October* 19, 1889.

1. *Injunction.  Pendente lite.*—To justify the granting of an injunction *pendente lite*, a clear case should be made, at least by the allegations of the complaint.

2. *Same.*—Where a party seeks in the same action to have certain contracts reformed and an injunction granted upon the reformed contracts, such injunction should not be granted *pendente lite*, but only after the contracts have been reformed.

Appeal from an order of the Monroe special term, vacating a temporary injunction, granted by the county judge of Monroe county.

*John Van Voorhis*, for appellant.

*Theodore Bacon*, for respondent.

DWIGHT, J.—The injunction, *pendente lite*, restrained the defendant, Allison, from using or permitting others to use, and from receiving pay for the use of, any machine of his invention for the manufacture of cigarettes ; and it restrained

the other defendants from paying Allison, or any person other than the plaintiff, for the use of such machines. It was granted solely on the ground, as stated in the order, that the plaintiff was entitled to the exclusive use of all such machines by virtue of agreements of the defendant, Allison, with the plaintiff and its assignors ; which agreements, as we find by reference to the complaint and proofs, were four in number.

By the first of these instruments, made in October, 1882, Allison, and a brother, J. A. Allison, each assigned to one F. DeWitt Clarke an undivided sixth of his interest in two patents owned by them jointly, one for an improvement in cigarettes and one for an improvement in cigarette machines, "and," to quote the language of the instrument, "any improvements, renewals or reissue of said cigarettes, cigarette machines or letters patent   *   *   *   to the full end of the term for which said letters patent are granted, and for the term of any improvements therefor, reissue or reissues thereon * * * meaning hereby to invest in the said F. DeWitt Clarke an undivided third of said patents, extension or improvements thereof ; " and the parties agreed that neither should " sell, dispose of or license or grant any portion of our interest in and to the same," to anybody, without the written consent of the other two.

By the second agreement, in February, 1883, the two Allisons and Clarke sold to one Frederick P. Allen " an undivided one-fourth part of all patents, machines, machinery, stock, etc, now used and owned by the said parties of the first part in the manufacture of tobacco, cigarettes, etc., under the firm name of Allison Bros. & Co., as well as new patents, machines, machinery or appliances which may be obtained or used in connection with said business. * * * The intention of this agreement being that each of said parties of the first and second parts shall have an undivided one-fourth interest in all the patents and improvements on same which may

hereafter be made, machines, stock and business of the firm of Allison Bros. & Co."

The third agreement, executed November 9, 1883, by the firm of Allison Bros. & Co., and the four individuals, above named, who are described as composing the firm, transferred to the plaintiff, described as a corporation duly organized, etc., all the property of the firm, machinery, tools, manufactured stock, material, etc., etc., " together with all patents owned by any or either of said firm for improvements in cigarettes and cigarette machines and machinery for manufacturing same."

The fourth agreement, under date of November 19th, 1883, ran from the two Allisons and Clarke to the plaintiff, and, after reciting that the firm of Allison Bros. & Co. had theretofore " used and enjoyed cigarette machines and improvements thereon as well as improvements in cigarettes covered by letters patent of the United States, numbers 231, 947 and 261, 576," purports to assign to the plaintiff corporation " our and each of our respective interests therein which we have heretofore enjoyed as members of said firm, and which have been used by said firm. This transfer to include any improvements, renewals or reissues of said patented improvements or letters patent numbers 231, 947 and 261, 576."

The foregoing extracts contain all the provisions of the several agreements, as executed between the parties, relating to the transfer of or the title to any patents for cigarette machines, issued or to be issued to, or improvements to be made thereon by any of such parties. The complaint alleges " that by reason of the premises the plaintiff became and was and is the owner of the patents hereinbefore mentioned and entitled to have assigned to it any invention or device which the said Oscar W. Allison or any other of said parties had theretofore invented or should thereafter invent or devise or obtain patents for." The latter branch of the conclusion seems scarcely to result from the premises above stated.

It is at least doubtful whether any or all of the agreements

executed between the parties purport to assure the right to, or transfer any interest in any invention not already patented, or such as should thereafter be patented strictly as improvements upon the former ; and so the plaintiff seems to have apprehended, for, in the second count of the complaint, it is alleged that the agreements as executed did not express the intention of the parties in this particular respect, but that a provision was omitted, by mutual mistake, from each of those agreements, to the effect that the assignee, or assignees, in each case should have the absolute and exclusive right to any and every invention which should thereafter be made by the assignors, or either of them, for use in the manufacture of cigarettes, and the plaintiff demands judgment, that each of said agreements be reformed by incorporating such a provision therein.

The acts of the defendant, Allison, alleged to be in contravention of his agreements with the plaintiff and his assignors which are relied upon as furnishing ground for this action, consist in making and furnishing to the other defendants cigarette machines of his invention not yet patented, without the consent of the plaintiff, and in receiving compensation for the use of such machines, by way of royalty on the product manufactured thereby.    It is alleged in the complaint that these machines " are the same machines covered by the letters patent aforesaid, but if they differ in any respect from the machines referred to in said letters patent, such alteration or improvement, or improved machine, and the exclusive right to use the same, are the property of this plaintiff.    The positive allegation of the identity of the machines in question with those covered by the letters patent owned by the plaintiff might create the impression that the plaintiff intended to charge the defendant with an infringement of the patent, and that the action was, in effect, to restrain such infringement; and this impression seems to have been received by the court at special term, where the injunction was vacated solely on the ground of the want of jurisdiction

15

in the courts of the state to enjoin the infringement of a patent even in, and pending, an action to determine the title to a patent alleged to be infringed. But this we do not understand to be the character or purpose of the plaintiff's action.

Indeed, upon the argument here, counsel for the plaintiff entirely disclaim the intention to charge an infringement, and frankly admit that the machine furnished by Allison to the other defendants is not an infringement of any patent already transferred to plaintiff, but, on the contrary, that it is a new and independent machine, of novel device, and not to be denominated an improvement on that of the plaintiff, unless in the sense of being a better machine. Neither does the plaintiff contend that the use of the new machine by the defendant Allison, and his license of its use by the other defendants, is an infringement of any patent which the plaintiff is entitled to have assigned to it, for the obvious reason that a patent for the new machine has not yet been issued. In short, as counsel for the plaintiff not only admit, but insist, there is no question of infringement in the case, but the plaintiff relies upon its alleged right, by virtue of the agreements of Allison, to the exclusive use and benefit of any and every invention made by him in the line of cigarette machinery, whether patented or unpatented, and whether an improvement upon, or independent of, those in existence when the agreements were made ; and the plaintiff contends that pending its action to establish this right, it was entitled to the provisional remedy granted by the county judge.

To this conclusion there are several objections, which, though not reached in the consideration of the motion in the court below, we think justified its action in dissolving the injunction, and require an affirmance of its order to that effect.

The first of these has already been indicated. The language of the agreements, in this respect, is very inartificial and, sometimes, perhaps, of doubtful sense ; but nowhere do

we find in them a clear expression of an intent to assure to the assignee the right to future inventions disconnected with, and independent of, those already secured by letters patent and assigned to the plaintiff. Without finally adjudicating the question of the proper construction of the instruments in this respect, we are of opinion that a case was not made, upon the terms of the instruments themselves, which warranted the granting of an injunction in advance of a trial of the issue. To justify the exercise of that power of the court, a clear case should be made, at least by the allegations of the complaint.

*Second.* If it be conceded that a case was not made for a preliminary injunction upon the terms of the agreements as they stand, it is very clear that such remedy was not allowable under the second count of the complaint. The equities thus alleged as ground for the reformation of the contracts are fully denied by the answer; and the evidence afforded by the writings themselves, under the hands and seals of the parties, is not easily overcome by *ex parte* affidavits which the defendant has had no opportunity to meet. The plaintiff must be content to await the reformation of the contracts before it can have affirmative relief based upon the contracts as reformed.

It is to be observed that the answer had not been interposed when the injunction was granted *ex parte*, and that the merits of the application were not considered at special term; so that the discretionary power of the court in granting or refusing the preliminary injunction is for the first time since issue joined exercised on this appeal.

A more radical objection is made to the maintenance of the injunction in this case, to the effect that whether the action is to be determined upon the agreements as they stand or as the plaintiff may procure them to be reformed, the fact remains that the right, which the plaintiff seeks to maintain, is to an invention not patented and in which, therefore, no right of property can exist which can be enforced by law.

It is not questioned, in this connection, that a valid contract may be made for the sale of an invention before it is patented, and that such a contract may assure to the purchaser the right to an assignment of letters patent after they are issued. But it is intended that no property right is acquired until the issue of the letters patent—there being no such thing as property in an unpatented invention. But as this objection goes to the maintenance of the action and would not affect the disposition to be made of the preliminary injunction, we are not disposed to pass upon it on this appeal.

For the reasons previously stated, we are of the opinion that the order dissolving the injunction *pendente lite* was properly made and should be affirmed.

Order affirmed, with ten dollars costs and disbursements.

BARKER, P. J., and MACOMBER, J., concur.

NOTE ON " PRELIMINARY INJUNCTION."

As to what is essential to granting an injunction *pendente lite*, see Allison Bros. Co. *v.* Allison, 54 Hun, 634.

Such injunction should not be based upon a reformed contract, until after reformation. Id.

As to when an injunction *pendente lite* to impound proceeds of a sale on a judgment, pending the trial of a suit to set it aside, is proper, see Hendricks *v.* Morrill, 53 Hun, 637.

For circumstances authorizing the granting of an injunction *pendente lite* in favor of a telephone company against a street railway, see H. R. Tel. Co. *v.* W. T. & R. R. Co., 56 Hun, 67.

The granting of an injunction *pendente lite* rests in the sound discretion of the court of original jurisdiction, and its discretion is reviewable only by the general term. H. R. Tel. Co. *v.* Watervliet T. & R. R. Co., 121 N. Y. 397; aff'g 56 Hun, 67.

A news association will not be enjoined, at the instance of a competitor, from enforcing a by-law that its members shall not take news from other news agencies. Dunlap's C. N. Co. *v.* Stone, 60 Hun, 583.

As to when an injunction *pendente lite* should be continued, in an action to restrain the defendants from obstructing a sidewalk in front of the plaintiff's premises, see R. & B. Co. *v.* B. S. Co., 59 Hun, 624.

### Note on " Preliminary Injunction."

A temporary injunction will not issue to restrain an elevated railway, where there is an adequate remedy at law. Krone *v.* Kings County Elev. R. R. Co., 50 Hun, 431.

An adequate remedy at law bars an injunction to restrain sale of goods. McDonald *v.* Bayne, 58 Hun, 611.

But, where some part of goods have been sold, injunction *pendente lite* will lie to restrain distribution of the proceeds among the creditors. Id.

In an action to determine claim to real estate, an injunction *pendente lite* will be granted to restrain proceedings in an ejectment suit affecting such land. Cuthbert *v.* Chauvet, 60 Hun, 577.

A temporary injunction was held proper to prevent cutting down the electric light poles in a street. E. C. Co. *v.* Heffernan, 58 Hun, 605.

The legislature may authorize the erection of poles for supplying light for street lighting, and possibly for private use. Id.

An injunction, pending action, is not the proper mode of collecting a license fee, where the right thereto is disputed. R. L. Ass'n *v.* Kellogg, 58 Hun, 605.

An injunction *pendente lite*, equivalent to final judgment, cannot be granted. Dunlap's C. N. Co. *v.* Stone, 60 Hun, 583.

A preliminary injunction, which practically furnishes the same relief as is sought by the final judgment, should not be continued. Steele *v.* P. C. & L. E. R. R. Co., 58 Hun, 611.

An injunction, which gives the same relief as is sought by the judgment, should be granted only when necessity requires ; Bronk *v.* Riley, 50 Hun. 489.

And not at all, requiring a person to do an act which may be finally determined to be illegal. Id.

Nor to compel an employer to continue a business, which he agreed to carry on for a fixed term. Id.

To warrant a preliminary injunction against a breach of contract the inadequacy of plaintiff's remedy at law should be made to appear. Carter *v.* Ferguson, 58 Hun, 569. In the case just cited, the court refused to enjoin an actor's breach of his contract of employment, when it was not shown that his artistic abilities were so exceptional that his place could not readily be filled. Id.

A preliminary injunction will not be granted, unless in case of a reasonable probability of establishing a right to a perpetual injunction. Finger *v.* Kingston, 56 Hun, 639.